```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


JOYCELYN LOVE GILES                       CIVIL ACTION

VERSUS                                    NO: 16-2413

WAL-MART LOUISIANA LLC                    SECTION: "J"(1)
ET AL.
```

## ORDER & REASONS

Before the Court is a *Motion to Remand* **(Rec. Doc. 13)** filed by Plaintiff, Joycelyn Love Giles; an opposition thereto (Rec. Doc. 17) filed by Defendants, Wal-Mart Louisiana LLC, Wal-Mart Stores Inc., Todd Jabbia, and Industrial Development Board of the City of New Orleans, Louisiana, Inc.; and Plaintiff's reply (Rec. Doc. 21). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of a slip-and-fall accident at a Wal-Mart Supercenter located at 1901 Tchoupitoulas Street in New Orleans, Louisiana. According to the state-court petition, on or about September 5, 2014, Plaintiff, Joycelyn Love Giles, slipped and fell in a hole in the Wal-Mart parking lot and suffered "severe injuries to the structure, tissue and muscles of his [sic] body." (Rec. Doc. 1-1, at 2, 4.) As a result, Plaintiff filed a petition for damages in the Civil District Court for the Parish of Orleans

against Wal-Mart Louisiana LLC, Wal-Mart Stores Inc., Industrial Development Board of the City of New Orleans, Louisiana, Inc., and Todd Jabbia, the Wal-Mart manager at the time of the accident.

On March 23, 2016, Wal-Mart Louisiana LLC and Wal-Mart Stores Inc. (collectively "Wal-Mart") removed this action on the basis of diversity jurisdiction. (Rec. Doc. 1.) There is no dispute that Plaintiff is a Louisiana citizen. Nor is it disputed that Industrial Development Board of the City of New Orleans, Louisiana, Inc. ("IDB") and Todd Jabbia are also Louisiana citizens for purposes of diversity jurisdiction. Although complete diversity appears to be lacking, Wal-Mart asserts that Plaintiff improperly joined IDB and Jabbia "in order to defeat diversity jurisdiction and keep this matter in state court." *Id.* at 3. Wal-Mart contends that Plaintiff has no arguable or reasonable basis on which to state a cause of action against them. *Id.*

Plaintiff maintains that IDB and Jabbia were properly joined in this case and therefore this Court lacks jurisdiction. Accordingly, Plaintiff filed the instant *Motion to Remand* **(Rec. Doc. 13)** on April 19, 2016. Defendants opposed the motion on April 26, 2016. On May 4, 2016, Plaintiff was granted leave to file a reply.

## **LEGAL STANDARD**

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have

2

original jurisdiction." 28 U.S.C. § 1441(a) (2011). "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship between the parties." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1332(a)). The amount in controversy required by § 1332(a) is currently $75,000. *Id.* The court considers the jurisdictional facts that support removal as of the time of removal. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). Because removal raises significant federalism concerns, any doubt about the propriety of removal must be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

Section 1441(b) specifies that an action otherwise removable solely on the basis of diversity jurisdiction may not be removed if any "properly joined" defendant is a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b)(2). Thus, a properly joined in-state[1] defendant will prevent removal, but an improperly joined in-state defendant will not. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).

---

[1] The term "in-state" is used to describe a defendant who is a citizen of the state where the action was brought, preventing removal under § 1441(b), as well as a defendant who would be nondiverse from a plaintiff, destroying diversity jurisdiction under § 1332(a).

3

The party seeking removal bears a heavy burden of proving that the joinder of the in-state defendant was improper. *Id.* at 574. The Fifth Circuit has recognized two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party." *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). To establish improper joinder where there is no allegation of actual fraud the defendant must demonstrate that there is no possibility of recovery by the plaintiff against any in-state defendant, which stated differently means that there is no reasonable basis to predict that the plaintiff might be able to recover against an in-state defendant. *Id.* "A 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Id.* at 573 n.9 (quoting *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 (5th Cir. 2000)).

A court should ordinarily resolve the issue by conducting a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendants. *Id.* at 573. The federal pleading standard governs whether a plaintiff has stated a claim against a nondiverse defendant for purposes of the improper joinder analysis. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, No. 14-20552, 2016 WL 1274030, at *3 (5th Cir.

Mar. 31, 2016). Where a plaintiff has stated a claim, but has misstated or omitted discrete and undisputed facts that would preclude recovery, the Court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood*, 385 F.3d at 573. Because the purpose of the improper joinder inquiry is to determine whether the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case.

## **DISCUSSION**

In order to avoid remand, Defendants must establish that both IDB and Jabbia were improperly joined. If either IDB or Jabbia is a properly joined defendant, then complete diversity does not exist and this Court lacks jurisdiction. With respect to the amount in controversy, Wal-Mart asserts that it is facially apparent that Plaintiff's claim will exceed 75,000 and points to Plaintiff's interrogatory response that she claims she sustained damages in excess of $75,000. (Rec. Doc. 1-1, at 13.) Thus, the sole issue before the Court is whether IDB and Jabbia were properly joined. Because there is no dispute that IDB and Jabbia are, in fact, Louisiana citizens, the Court must determine whether Plaintiff has stated a claim against IDB or Jabbia.

First, the Court considers whether Jabbia is a properly joined defendant. Jabbia is alleged to be the general manager of the Wal-Mart store where the incident at issue occurred. The dispositive

issue is whether Plaintiff has stated a claim that Jabbia is personally liable to her. Under Louisiana law, a store manager or employee may be personally liable for a customer's injury on store premises only if (1) the employer owes a duty of care to the customer; (2) the employer delegated that duty to the employee; (3) and the employee breached this duty through his own personal fault and lack of ordinary care. *Moore v. Manns*, 732 F.3d 454, 456-57 (5th Cir. 2013) (citing *Canter v. Koehring Co.*, 283 So. 2d 716, 721 (La. 1973), *superseded on other grounds by statute*, La. Rev. Stat. § 23:1032). However, personal liability cannot be imposed upon the employee simply because of his "general administrative responsibility." *Canter*, 283 So. 2d at 721. The employee "must have a personal duty towards the injured plaintiff, breach of which specifically caused the plaintiff's damages." *Id.*

   Plaintiff argues that Jabbia breached his duty to maintain safety of the premises and is therefore personally liable to her for the damages she sustained. Plaintiff's petition alleges that Jabbia "had care, custody and control and/or was responsible for providing and supervising the premises so that safe ingress and egress was available to the area where [Plaintiff] fell." (Rec. Doc. 1-1, at 2.) This is the only allegation specific to Jabbia. Plaintiff further alleges that "all defendants had actual or constructive knowledge that an unreasonably dangerous condition existed and/or that a hole in the floor of the premises existed."

6

*Id.* at 2-3. In addition, Plaintiff's petition includes a boilerplate list of alleged negligent acts committed by all Defendants, including the following:

  a. Failure to properly manage and maintain the property and store;

  b. Failure to manage and maintain the building and adjacent area and store in safe condition;

  c. Failure to take all precautions such as to avoid this accident;

  d. Failure to discover and correct an existing dangerous condition;

  e. Failure to provide business invitees, such as petitioner, with a safe place to walk;

  f. Failure to maintain the property in accordance with Municipal, State, and other applicable codes;

  g. Failure to maintain the property and store in good working condition;

  h. Failure to properly supervise and conduct the work onsite and operation of the property and store at issue;

  i. Giving express or implied authorization to unsafe practices;

  j. Failure to properly inspect and implement management, maintenance, janitorial, and safety procedures at the property and store at issue;

  k. Failure to implement proper safety and maintenance procedures at property and store at issue;

  l. Failure to repair the hole at the subject fall area;

  m. Failure to maintain the property in good working condition;

      n. Failure to provide signage warning of potential hazards at the subject fall area of the premises at issue.

*Id.* at 3-4. Plaintiff argues that these allegations are sufficient to state a claim against Jabbia for his personal liability.

    Several federal district courts in Louisiana have found similar allegations insufficient to support personal liability on the part of a store manager or employee and concluded that the store manager or employee was improperly joined to defeat diversity.[2] For example, in *Robinson v. Wal-Mart Stores, Inc.*, a plaintiff sued a Wal-Mart store and its general manager after she slipped and fell while shopping in the store. No. 15-6871, 2016 WL 1572078, at *1 (E.D. La. Apr. 19, 2016). The defendants removed on the basis of improper joinder of the manager, and the plaintiff moved to remand. *Id.* The court denied the motion to remand, concluding that the manager was improperly joined because the

---

[2] *See, e.g.*, *Martin v. Winn Dixie Montgomery, LLC*, No. 15-5770, 2016 WL 952258, at *3 (E.D. La. Mar. 14, 2016) (holding that plaintiff who slipped and fell on water on the floor near a leaking cooler failed to state a claim against the store manager because plaintiff's "bald assertion" that the manager "had direct knowledge" of the leaking cooler was insufficient to suggest anything beyond the manager's "general administrative responsibility" as store manager); *Gautreau v. Lowe's Home Ctr., Inc.*, No. 12-630, 2012 WL 7165280, at *4 (M.D. La. Dec. 19, 2012) (holding that plaintiff who was injured when a board fell from a shelf and hit her failed to state a claim against the store manager because plaintiff did not allege that the manager "actively contributed to or had any personal knowledge of a harmful condition sufficient to create a personal duty owed to her"); *Brady v. Wal-Mart Stores, Inc.*, 907 F. Supp. 958, 960 (M.D. La. 1995) (holding that plaintiff who was injured when several boxes fell on her failed to state a claim against the store manager because the plaintiff did not allege that the manager "was the employee who stacked the boxes improperly or who personally caused the accident"); *Tudbury v. Galloway*, No. 91-1719, 1991 WL 112013, at *1 (E.D. La. June 14, 1991) (holding that plaintiff who slipped and fell on a liquid substance failed to state a claim against the store manager because plaintiff did not allege that the manager "caused the spill or saw the spill and neglected to clean it").

plaintiff failed to allege that the manager owed a personal, independent duty to store patrons, delegated to him by Wal-Mart, which he breached through personal, rather than technical or administrative, fault. *Id.* at *3.

Similarly, in *Rushing v. Wal-Mart Stores, Inc.*, a plaintiff sued Wal-Mart and the store manager for personal injuries she allegedly sustained when two cases of drinks fell on her head while she attempted to remove a case of drinks from a shelf. No. 15-269, 2015 WL 1565064, at *1 (E.D. La. Apr. 8, 2015). The plaintiff alleged that the manager was liable for a list of negligent acts, such as failing to exercise vigilance, failing to supervise his employees, failing to properly stock the shelves, and failing to inspect the shelving to remove dangerous conditions. *Id.* at *3. The court concluded that plaintiff's allegations against the manager were insufficient to trigger personal liability because plaintiff did not allege that the manager knew of or actively contributed to any alleged unsafe conditions. *Id.* at *4. The court found it to be "a classic case of attempting to place liability upon an employee 'simply because of his general administrative responsibility for performance of some function of employment.'" *Id.* (quoting *Carter v. Wal-Mart Stores Inc.*, No. 04-0072, 2005 WL 1831092, at *3 (W.D. La. July 28, 2005)).

In contrast, in *Lounsbury v. Winn-Dixie Louisiana, Inc.*, the plaintiff was looking at various pie fillings when a store employee

9

walked up behind him and squatted by his feet. No. 95-2544, 1995 WL 626211, at *1 (E.D. La. Oct. 20, 1995). As the plaintiff made his selection, he tripped and fell backwards over the squatting employee. *Id.* The court held that the plaintiff stated a claim against the employee because the plaintiff alleged that the employee "breached his duty to him by obstructing his passage and negligently tripping him." *Id.* at *2. There, the alleged negligence did not arise out of a "general administrative responsibility," but from a personal duty the employee owed to the plaintiff. *Id.*

The allegations in Plaintiff's petition are more analogous to those in *Robinson* and *Rushing* than those in *Lounsbury*. Plaintiff has not alleged that Jabbia owed her a personal, independent duty, the breach of which caused her to slip and fall. Nor has Plaintiff alleged that Wal-Mart delegated to Jabbia the duties which it owed to third-party patrons as a merchant under Louisiana law.[3] Instead, Plaintiff generically alleges that Jabbia failed to supervise, provide proper safety procedures to Wal-Mart's employees, and maintain the premises in a safe condition. These assignments do not entail a personal duty to ensure Plaintiff's safety. *See, e.g.*, *Rushing*, 2015 WL 1565064, at *2. Further, Plaintiff does not allege that Jabbia personally knew or actively contributed to any alleged

---

[3] Wal-Mart, as a merchant, owes its patrons a duty to exercise reasonable care to keep its floors in a reasonably safe condition, ensuring that the premises are free of hazardous conditions which might reasonably cause damage. La. Rev. Stat. § 9:2800.6.

10

unsafe conditions. *See id.* Plaintiff's allegation that all Defendants "had actual or constructive knowledge" of the allegedly dangerous condition on the premises is a conclusory allegation that the Court is not required to accept and it does not amount to an allegation that Jabbia personally knew of the allegedly dangerous hole in the parking lot. *See Martin*, 2016 WL 952258, at *3.

In sum, a review of Plaintiff's petition reveals no allegations that Wal-Mart ever delegated any of its duties to protect the safety of Plaintiff nor that Jabbia ever acted unreasonably. This is "a classic case of attempting to place liability upon an employee 'simply because of his general administrative responsibility for performance of some function of employment.'" *Rushing*, 2015 WL 1565064, at *4. Under such circumstances, Plaintiff cannot recover against Jabbia under Louisiana law. Therefore, Jabbia has been improperly joined.

Second, the Court considers whether IDB is a properly joined defendant. Plaintiff alleges that IDB was the owner of 1901 Tchoupitoulas Street, the premises where the incident at issue occurred. According to Defendants, IDB entered into a lease agreement with Riverview Retail Development Company LLC ("Riverview") for the lease of immovable property on which the Wal-Mart store was constructed. (Rec. Doc. 1-1, at 9.) Riverview then assigned the lease agreement to Wal-Mart Real Estate Business

11

Trust. *Id.* At the time of the incident, Wal-Mart was the lessee under the lease agreement and IDB was the lessor. The lease agreement includes a provision requiring the lessee to make all repairs, and it provides that the lessor shall not be required to maintain or repair any part of the property. *Id.* at 10.

Plaintiff argues that IDB is properly joined as a defendant because "Louisiana jurisprudence is well settled that an owner-lessor is held in strict liability for personal injuries sustained by his lessee as a result of defects on the leased premises." (Rec. Doc. 13-2, at 5.) In support of this assertion, Plaintiff cites *Winchell v. Johnson Props., Inc.*, 640 So. 2d 399, 403 (La. App. 3 Cir. 1994) (Cooks, J., dissenting) (citing La. Civ. Code art. 2322). Louisiana Civil Code article 2322, cited in the dissenting opinion in *Winchell*, was amended in 1996. In 1996, the Louisiana legislature enacted sweeping tort reform, which reduced the standard of liability for landowners from strict liability to negligence. *See* 1996 La. Acts 710. Accordingly, under the new legislation, a lessor is no longer held strictly liable in tort for damages resulting from defects in the premises. Thus, the dispositive issue is whether Plaintiff has stated a claim against IDB for negligence.

Article 2322 currently provides that the owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice

12

or defect in its original construction. La. Civ. Code art. 2322. However, the owner is answerable for damages "only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." *Id.*

Similarly, article 2317.1 provides that the owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, "only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." La. Civ. Code art. 2317.1. Thus, liability under both articles is predicated on negligence. Under both articles, the plaintiff must show that the defendant knew or should have known of the condition that caused the harm.

Plaintiff further argues that IDB's obligation to keep its property free of defects is nondelegable and therefore IDB cannot contractually limit its liability to third persons for injuries arising from defects on the premises. (Rec. Doc. 13-2, at 5.) Plaintiff cites *Klein v. Young*, 111 So. 495 (La. 1927), for this proposition. In *Klein*, the court held that a provision in a contract of lease could not relieve a lessor of liability to third

13

persons. *Id.* at 497. At the time of the court's ruling in *Klein*, article 2322 imposed strict liability on the owner of a building for damage caused by a defect in the property. However, *Klein* was statutorily overruled by Louisiana Revised Statutes section 9:3221.

Louisiana Revised Statutes section 9:3221 provides that "the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time." La. Rev. Stat. § 9:3221. The statute "was undoubtedly designed to relieve the owner of some of the burdens imposed upon him by law in cases where he had given dominion or control of his premises to a tenant under a lease." *Jamison v. D'Amico*, 955 So. 2d 161, 166 (La. App. 4 Cir. 2007).

To establish liability on the part of a lessor who has passed on responsibility for the condition of his property to his lessee, "a plaintiff must establish that (1) he sustained damages; (2) there was a defect in the property; and (3) the lessor knew or should have known of the defect." *Smith v. French Mkt. Corp.*, 886 So. 2d 527, 530 (La. App. 4 Cir. 2004). Thus, just as under articles

2317.1 and 2322, a plaintiff must show that the lessor knew or should have known of the defect.[4]

Here, Plaintiff's allegations are insufficient to state a plausible claim for relief against IDB. As discussed above, Plaintiff's bald assertion that all Defendants had actual or constructive knowledge of the allegedly defective condition is a conclusory allegation that the Court is not required to accept. Plaintiff fails to plead any facts to demonstrate that IDB knew or should have known of the defect. Defendants submitted the affidavit of IDB President Alan Phillipson, which states that IDB did not know of a hole in the parking lot, did not receive notice of a hole in the parking lot, and, in accordance with the lease agreement, did not inspect the premises or make any repairs. Because Plaintiff has failed to state a claim against IDB, the Phillipson affidavit is immaterial.

In sum, a review of Plaintiff's petition reveals no allegations showing that IDB knew or should have known of the alleged defect or that IDB acted unreasonably. Under such

---

[4] Section 9:3221 was enacted in 1932 in order to reduce the lessor's tort liability from strict liability to a negligence standard when the lease contained an assumption of liability clause. Because the 1996 tort reform changed the underlying tort standard, the inclusion of an assumption of liability clause in a lease likely no longer has an effect on tort claims: "the lessor is simply liable for his own negligence, regardless of any agreement of the parties to the contrary." Melissa T. Lonegrass, *The Anomalous Interaction Between Code and Statute: Lessor's Warranty and Statutory Waiver*, 88 Tul. L. Rev. 423, 464-69 (2014). Although courts continue to utilize a distinct three-part test for liability when the lease contains an assumption of liability clause, "in substance the inquiry is no different from the negligence analyses under articles 2317.1, 2322, and 2315." *Id.* at 468.

circumstances, Plaintiff cannot recover against IDB under Louisiana law. Therefore, IDB has been improperly joined.

The Court concludes that Defendants have demonstrated that there is no reasonable basis to predict that Plaintiff will recover on her claims against Jabbia and IDB. Accordingly, the Court may ignore Jabbia's and IDB's citizenship for the purpose of determining the existence of subject matter jurisdiction. The parties have asserted no other impediment to this Court's exercise of diversity jurisdiction, and the pleadings and notice of removal establish that diversity jurisdiction exists in this case. The motion to remand is therefore denied.

For the same reasons that Plaintiff's motion to remand is denied, it is appropriate to dismiss Plaintiff's claims against Jabbia and IDB. *See Int'l Energy Ventures Mgmt.*, 2016 WL 1274030, at *9 ("When, as here, a court determines that a nondiverse party has been improperly joined to defeat diversity, that party *must* be dismissed without prejudice.").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion to Remand* **(Rec. Doc. 13)** is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants Todd Jabbia and Industrial Development Board of the

16

City of New Orleans, Louisiana, Inc. are **DISMISSED without prejudice**.

New Orleans, Louisiana, this 13th day of May, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE